IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT WEST VIRGINIA
BECKLEY DIVISION

**STEPHANIE ADKINS and,**
**DOUGLAS SHORT,** on behalf of themselves
And all others similarly situated,

       **Plaintiffs,**

**v.**                                            **Civil Action 5:17-cv-04107**

**MIDLAND CREDIT MANAGEMENT, INC.,**

       **Defendant.**

**<u>MEMORANDUM IN OPPOSITION TO PLAINTIFFS'</u>**
**<u>MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.     Facts Relevant to Class Certification ...................................................... 2

        1.     MCM Services Accounts Originated by Numerous Different Creditors, Each With its Own Set of Terms and Conditions and Account Level Documents ......................................................... 3

        2.     MCM Complied with the Relevant Amendments to the WVCCPA Requiring Certain Disclosures on Time-Barred Communications. ........... 4

        3.     Midland's "Estimated SOL Expiration" Date is Only a Conservative Estimate of the Actual Expiration of the Statute of Limitations. ..................................................................................... 5

        4.     Determining the Expiration of the Statute of Limitations on a Given Account Requires a Review of Individual Underlying Account Records ................................................................................ 7

    B.     Procedural History ................................................................................... 8

        1.     Plaintiffs' Right to Cure Notice did not Identify the Claims they Now Seek to Prosecute on Behalf of a Purported Class. ........................... 8

        2.     Plaintiffs' Complaint does not Allege a Violation of the 2017 Statutory Amendment, which is Now the Crux of Plaintiffs' Motion to Certify. ..................................................................................... 9

        3.     Plaintiffs now Seek to Certify a Class they did not Plead Based on a Theory Never Identified in the Complaint ............................................. 9

III.   STANDARD OF REVIEW ............................................................................... 10

IV.    ARGUMENT ..................................................................................................... 11

    A.     Plaintiffs' Class Definition is Overbroad Because it does not Satisfy the Elements of a Properly Pled Claim under West Virginia Code 46A-2-128(f) ........................................................................................................ 11

        1.     A Class Definition Must Track the Elements of the Claim. .................... 11

        2.     Plaintiffs' class is facially overbroad because it improperly assumes as a "fact" that MCM's internal estimate establishes the date the relevant statute of limitations actually expired on each putative class member's debt ................................................................ 12

    B.     Plaintiffs cannot Satisfy the Typicality and Commonality Requirements of Rule 23(a)(2) or the Predominance and Superiority Requirements of Rule 23(b)(3) because Individualized Issues Predominate. ........................................ 14

## TABLE OF CONTENTS
(continued)

Page

1.     Plaintiffs cannot meet their burden to prove that common issues predominate............................................................................................. 14

      a.     Liability requires an individualized inquiry................................. 15

      b.     Individualized defenses exist based on the terms of the underlying account agreements.................................................... 18

2.     Plaintiffs Cannot Satisfy the Typicality Requirement ............................ 19

V.     CONCLUSION............................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. EQT Prod. Co.*,
  No. 1:10-cv-00037, 2013 U.S. Dist. LEXIS 142005 (W.D. Va. June 5, 2013)......................12

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................................................13, 15

*Bolin v. Sears, Roebuck & Co.*,
  231 F.3d 970 (5th Cir. 2000) ...............................................................................................12

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996) .................................................................................................18

*Clavell v. Midland Funding, LLC*,
  2011 WL 2462046 (E.D. Pa. June 21, 2011)....................................................................14, 16

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2014)........................................................................................................10, 11

*In re Constar Int'l Sec. Litig.*,
  585 F.3d 774 (3d Cir. 2009)...................................................................................................10

*Dieter v. Microsoft Corp.*,
  436 F.3d 461 (4th Cir. 2006) ...............................................................................................20

*Dykes v. Portfolio Recov. Assocs., LLC*,
  2016 WL 346959 (E.D. Va. Jan. 28, 2016) .........................................................................12

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) .............................................................................................12, 14

*Freyermuth v. Credit Bureau Servs., Inc.*,
  248 F.3d 767 (8th Cir. 2001) .................................................................................................2

*Gariety v. Grant Thornton, LLP*,
  368 F.3d 356 (4th Cir. 2004) .............................................................................................11, 15

*Gary Plastic Packaging Corp. v. Merrill Lynch Money Mkt., Inc.*,
  903 F.2d 176 (2d Cir. 1990)...................................................................................................21

*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982)............................................................................................................11, 21

*Hordge v. First Nat'l Collection Bureau, Inc.*,
Civil Action No. 4:15cv1695 (S.D. Tex. July 5, 2018) (Order attached as
"Exhibit B" to Pl.'s Mot.) ....................................................................................................18

*Jenkins v. General Collection Co.*,
2008 WL 4104677 (D. Neb. Aug. 28, 2008) ........................................................................18

*Karnes v. Flemming*,
No. 07-0620, 2008 U.S. Dist. LEXIS 109518 (S.D. Tx. July 31, 2008) ................................19

*Khalif L. v. City of Union City*,
2012 U.S. Dist. LEXIS 64567 (N.D. Cal. May 8, 2012) ........................................................12

*Loef v. First Am. Title Ins. Co.*,
2012 U.S. Dist. LEXIS 174313 (D. Me. Dec. 10, 2012) ........................................................15

*McIntyre v. Household Bank*,
2004 U.S. Dist. LEXIS 25629 (N.D. Ill. 2004) ....................................................................21

*McKinney v. Fairchild Intern. Inc.*,
199 W.Va. 718 (W.Va. 1997) ..............................................................................................13

*Parkis v. Arrow Fin. Servs., LLS*,
2008 WL 94798 (N.D. Ill. Jan. 8, 2008) ..............................................................................17

*Renault v. L. N. Renault & Sons*,
188 F.2d 317 (3d Cir. 1951) ................................................................................................17

*Riffle v. Convergent Outsourcing, Inc.*,
311 F.R.D. 677 (M.D. Fla. 2015) ..............................................................................16, 17, 18

*Shelley v. AmSouth Bank*,
2000 U.S. Dist. LEXIS 11429 (S.D. Ala. 2000) ....................................................................19

*Stand Energy Corp. v. Columbia Gas*,
2008 U.S. Dist. LEXIS 63913 (S.D. W. Va. Aug. 19, 2008) (Chambers, J.) ........................18

*Stimpson v. Midland Credit Management*,
2018 WL 4643110 (D. Id. Sept. 27, 2018) ..........................................................................17

*Thorn v. Jefferson-Pilot Life Ins. Co.*,
445 F. 3d 311 (4th Cir. 2006) ..............................................................................................11

*Tipton v. Sec'y of Educ. of U.S.*,
1992 U.S. Dist. LEXIS 22797 (S.D.W.Va. Aug. 28, 1992) (Copenhaver, J.) ......................20

*Wal-Mart Stores v. Dukes*,
131 S. Ct. 2541 (2011) ..............................................................................................11, 12, 15, 20

**Statutes**

FDCPA ............................................................................................................................9

state UCC .......................................................................................................................17

UCC ..........................................................................................................................6, 7

Uniform Commercial Code ...............................................................................................6

W. Va. Code 46A-2-128(f) .......................................................................................10, 11

W. Va. Code § 46-2-725 ................................................................................................17

W.Va. Code § 46A-2-127 .................................................................................................8

W.Va. Code § 46A-2-127(d) ............................................................................................8

W.Va. Code § 46A-2-128 .........................................................................................8, 9, 21

W.Va. Code § 46A-2-128(f) .............................................1, 4, 5, 8, 9, 13, 14, 15

W. Va. Code § 55-2-6 ....................................................................................................17

*West Virginia Code* § 46A-2-128(f)(1) and (2) ..............................................................8

West Virginia Consumer Credit Protection Act ...............................................................1

WVCCPA .....................................................................................................................4, 9

**Other Authorities**

Fed. R. Civ. P. 23(b)(3)(D) .............................................................................................19

Rule 12(b)(1) .................................................................................................................10

Rule 23 ....................................................................................................10, 11, 12, 15

Rule 23(a) ...............................................................................................................11, 20

Rule 23(a)(2) .................................................................................................................15

Rule 23(b) ......................................................................................................................11

Rule 23(b)(3) .................................................................................................................15

Rule 23's ................................................................................................................10, 13

West Virginia Senate Bill 563 .........................................................................................4

## I.    INTRODUCTION

Realizing that the theories asserted in their Class Action Complaint – violations based on Midland's alleged failure to include disclosures in MCM's *initial* communication with consumers – are factually and legally flawed, Plaintiffs have abandoned them and seized on a new one.  As evidenced in Plaintiffs' Motion for Class Certification ("Motion"), their new theory is that MCM failed to include compliant disclosures in letters sent *after* MCM's initial communication with the consumer.  Plaintiffs now seek to certify a class not identified in their Complaint: namely, "[a]ll persons with West Virginia addresses to whom Midland sent a debt collection letter *on or after July 4, 2017* seeking to collect debt that *Midland's records indicated* had passed its statute of limitations, which letter failed to provide" the statutorily required disclosure.  (Pl.'s Mem. Supp., at 2.)

Even excusing Plaintiffs' failure to provide notice of and to plead the claims they now seek to pursue on behalf of a class – which is the subject of a pending motion before this Court and alone is fatal to certification – their class definition is facially flawed because it relies on a factual assumption unsupported by any evidence – that the "estimated SOL expiration" date shown on a spreadsheet produced by MCM is, in fact, the date the relevant statute of limitations expired.  To be clear, the West Virginia Consumer Credit Protection Act ("WVCCPA") requires the disclosure (and thereby imposes liability) only when correspondence is sent to consumers whose debts are "beyond the statute of limitations for filing a legal action for collection."  W.Va. Code § 46A-2-128(f).  Plaintiffs do not even identify which statute of limitations applies to each of 11,744 different accounts in their putative class definition, let alone offer any uniform way to ascertain that all class members' debts were "beyond the statute of limitations" when MCM sent the allegedly offending correspondence.

1

Although Plaintiffs attempt to hide from the problem, any determination of when the statute of limitations expired on each proposed class member's account must be made on an individual basis, *i.e.*, for each putative class member, based on the type of account, the terms governing the account (including governing law and choice of law provisions), the payment history (both before and after transfer of the debts to MCM), and individual facts that may result in tolling of the statute of limitations.  As a result, Plaintiffs' class definition is overbroad – it includes many individuals who have no claims against MCM because their debts were not "beyond the statute of limitations" when they received correspondence from MCM.  And if amended to remove any reference to MCM's records, Plaintiffs' class becomes impossible to ascertain without fact-intensive individual inquiry – an administrative nightmare that precludes class certification.

Moreover, the individual variations involved in calculating the actual statute of limitations for each account in the proposed class strike at the heart of Plaintiffs' claims.  MCM cannot be liable unless the putative class members' debts were time-barred when they received the challenged correspondence.  Without uniform proof to make that determination on a class-wide basis (and there is none), Plaintiffs cannot show that common issues predominate, that their claims are typical, or that a class action is a superior method of proceeding.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   <u>Facts Relevant to Class Certification</u>

As a preliminary matter, there is no dispute about the validity of the debts at issue in this case, nor does the alleged expiration of the applicable statute of limitations prohibit communications to collect the debts.  Instead, the law merely limits the judicial remedies available to a creditor—specifically, a debt collector or creditor may not initiate legal action or threaten to do so in connection with collection of the debts.  *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) ("[A] statute of limitations does not eliminate the debt; it merely

limits the judicial remedies available").  The letters at issue in this case do no such thing, nor is there any allegation that they do.  Instead, this case involves the form of the disclosure that West Virginia law requires on communications sent to borrowers whose debts are time barred.

### 1.   MCM Services Accounts Originated by Numerous Different Creditors, Each With its Own Set of Terms and Conditions and Account Level Documents.

MCM is a wholly-owned subsidiary of Encore Capital Group, Inc.  (Declaration of Jared McClure ("McClure Decl.") ¶ 1, attached as **Exhibit A**.)  Midland Funding, LLC ("Midland Funding"), also a wholly-owned subsidiary of Encore Capital Group, Inc., acquires title to charged-off consumer accounts from numerous established national banking institutions, including FIA Card Services, N.A. a/k/a Bank of America, Credit One Bank, N.A., Beneficial Bank, WebBank, and Fifth Third Bank, among many others.  (McClure Decl. ¶¶ 1, 3.)  On behalf of Midland Funding, MCM services the accounts, which include various types, including credit card accounts and consumer loans. (McClure Decl. ¶ 3.)

In connection with the sale of charged-off accounts to Midland Funding, the original creditors transfer certain records and documents to MCM. (McClure Decl. ¶ 4.) These documents, include numerous types of account documents, including loan agreements, terms and conditions, purchase and transfer information and documents, and debt-collection records, all of which are kept and relied upon by MCM in the regular course of its business. (McClure Decl. ¶ 6.)  In connection with the purchase of a portfolio of consumer accounts, MCM also regularly receives terms and conditions related to those portfolios. (McClure Decl. ¶ 7.)  Additionally, after the purchase of accounts, MCM has the right to request and, when available, obtain from the original creditor additional documents regarding the accounts sold, including the specific terms and conditions governing the account(s), any account documents signed by the borrower, etc.  *Id.*

3

For the 11,774 different accounts included in Plaintiffs' putative class definition, evidence produced in this case shows that there are, at a minimum, 57 different creditors.  (McClure Decl. ¶ 10.) Each creditor has different terms and conditions that govern the accounts in a given portfolio. *Id.* As shown by the examples attached as Exhibits 1-3 to the McClure Declaration, numerous accounts are governed by arbitration provisions that bind the borrowers to mandatory arbitration and waive any right to class-wide arbitration.  (McClure Decl. ¶ 12.)  Determining which accounts are governed by such provisions, however, requires a review of individual account documents.

### 2. MCM Complied with the Relevant Amendments to the WVCCPA Requiring Certain Disclosures on Time-Barred Communications.

Effective June 6, 2014, Section 46A-2-128(f) of the WVCCPA was amended to require that, when a debt is beyond the statute of limitations, the creditor include – in its ***initial*** written communication with a consumer – the following disclosure: "[t]he law limits how long you can be sued on a debt.  Because of the age of your debt, [we] cannot sue you for it." *See* W.Va. Code § 46A-2-128(f) (2014).  Subsequently, on April 21, 2017, Governor Justice signed Senate Bill 563, which requires that the above-quoted disclosure be included in "all written communications with such consumer." *See* W. Va. Code § 46A-2-128(f).  The law went into effect on July 4, 2017. *Id.* It is this latter amendment that is at issue in Plaintiffs' newly formulated class definition.

MCM maintains robust procedures to monitor developments and changes in federal and state laws and regulations in all fifty (50) states, including those relating to debt collection correspondence and required consumer disclosures.  (Declaration of Jared McClure ("2nd McClure Decl.") ¶ 4, attached as **Exhibit B**.) Upon learning of the June 6, 2014 statutory enactment, MCM put into place procedures to ensure that the "initial letter" sent to consumers in West Virginia included the required language.  MCM continued monitoring the progression of West Virginia Senate Bill 563 in 2017.  On April 28, 2017, the day after Governor Justice signed the bill, MCM's

Legal/Compliance Department sent Mr. McClure—Midland's Director of Marketing—an email request for all letters templates to be changed as of July 4, 2017 to comply with West Virginia Code § 46A-2-128(f) as amended.  (2nd McClure Decl. ¶ 9.)

Separately, during this same time frame, MCM was in the process of implementing a comprehensive new change-management system designed to create uniformity in the submission of requests for changes to written communications.  (2nd McClure Decl. ¶ 6.)  On or about August 9, 2017, MCM's Legal/Compliance Department discovered that, despite the existing procedures for ensuring compliance, the West Virginia Code § 46A-2-128(f) change inadvertently had not been implemented on July 4, 2017.  The Marketing Department worked diligently to make the change and within two weeks of identifying the issue, the change had been implemented in accordance with the initial request made in April 2017.  (2nd McClure Decl. ¶ 11.)

### 3.    Midland's "Estimated SOL Expiration" Date is Only a Conservative Estimate of the Actual Expiration of the Statute of Limitations.

Under Protective Order, MCM produced to Plaintiffs documents entitled "Legal Collections Channel Statute of Limitations Policy," "Global Operations Statute of Limitations Policy," and "MCM Statute of Limitations Procedures."  (McClure Decl. ¶ 13.)  These documents detail how MCM estimates the expiration of the statute of limitations for its accounts.  *Id.*

As described more fully in the McClure Declaration, the system first calculates the accrual date using available data related to last payment, date of occurrence and/or date the account was opened. (McClure Decl. ¶ 15.) This initial step is intentionally conservative, shortening the effective estimated statute of limitations by as much as 30 days.  *Id.*  MCM's system next estimates *which* statute of limitations applies.  (McClure Decl. ¶ 16.) This step is an automated calculation that relies on relevant data points, including information provided by the original creditor, the state of the consumer's last known/best address, certain information included in applicable account

agreements, whether and when the consumer has made payments on the debt, the type of debt, whether the account is subject to the Uniform Commercial Code ("UCC"), etc. *Id.*

There are, however, factors relevant to the expiration of the statute of limitations on any given account that the calculus does not consider, such as the state(s) the consumer previously resided in, the various legal theories available in the jurisdiction (*i.e.*, breach of contract, account stated, etc.), whether any facts exist that might result in the tolling of the statute of limitations (*e.g.*, if the consumer has filed or been discharged in bankruptcy). (McClure Decl. ¶ 17.)  Additionally, the system does not perform certain account-level analyses that could affect the applicable statute of limitations. *Id.* Because the calculation necessarily uses broad rules, MCM has designed it to default to the most conservative (*i.e.*, shortest) possible statute of limitations. (McClure Decl. ¶ 18.) For example, if the governing law provision in the terms and conditions related to the account provides a different statute of limitations than the forum state's statute, the system automatically chooses the shorter period. *Id.* Similarly, if the account is potentially subject to the UCC, but the terms and conditions articulate a different governing law provision, the system chooses the shorter period. *Id.* And if there are multiple legal theories available that carry different possible statutes of limitations (*i.e.*, breach of contract theory, account stated, etc.) the system automatically chooses the shortest period. *Id.*

Another factor generally considered when determining the statute of limitations applicable to an account is whether an expired statute of limitations may have been "revived." In many jurisdictions, an expired statute of limitations may be re-set, or "revived," if a consumer makes a payment (partial or otherwise) on the expired debt. (McClure Decl. ¶ 20.) As set forth in in the McClure Declaration, however, it is MCM's policy never to revive time-barred debt under any

circumstance.  (MClure Decl. ¶ 21.) This "no revival" policy means that it is possible for a debt to be within the applicable statute of limitations, but that MCM's system shows it as expired.[1]  *Id.*

In short, the spreadsheets produced in this case show only MCM's internally calculated "Estimated SOL Expiration" date. (McClure Decl. ¶ 14.) The "estimated" date is the result of an intentionally conservative calculation, ensuring MCM's compliance with law (and benefiting past-due debtors), but results in an inflated approximation of time-barred debt.  *Id.*  It does not (and is not intended to) identify the *actual* date the statute of limitations expires for any given account.

### 4.     Determining the Expiration of the Statute of Limitations on a Given Account Requires a Review of Individual Underlying Account Records.

The above design means that, upon an account-by-account review, a debt that MCM's system estimated as past the statute of limitations could, in fact, legally be still within the applicable limitations period. (McClure Decl. ¶ 19.)  Indeed, the spreadsheet of accounts produced in this case contains several obvious examples where the calculated MCM statute of limitations is considerably shorter than the actual statute of limitations applicable to the account.  For instance, some accounts on the spreadsheet are consumer loans, where the consumer signed the origination documents.  *Id.* In West Virginia, the statute of limitations applicable to such an account is 10 years.  Rather than using a 10-year limitations period, however, the system applied a shorter statute of limitations, resulting in the accounts appearing to be past the statute of limitations when they were not.   (*See* Relevant Excerpts of Spreadsheet Produced, attached as **Exhibit C**.) This is just

---

[1] If a post-expiration payment is made on an account, due to MCM's "no revival" policy, MCM's estimated calculation will ignore that payment for purposes of calculating the MCM estimated statute of limitations expiration date. (McClure Decl. ¶ 21.) In other words, once a statute of limitations expires on a Midland Funding account, that account is considered time barred by MCM no matter what happens. *Id.* This no-revival policy results in additional situations in which an account may appear on the spreadsheet with an "estimated SOL expiration" date when the statute of limitations has been revived and the debt is not legally time-barred.  (McClure Decl. ¶¶ 21-22.)

one example of how the default mechanism in MCM's statute of limitations estimation helps ensure MCM's over-compliance with state and federal law.

Moreover, each underlying account agreement – whether signed or not – has different terms and conditions, including different payment and default provisions governing when a payment is considered past due and the factual circumstances that trigger a default.  In yet another example, the Beneficial personal credit line account agreement provides that default occurs upon failure to pay within 30 days of the due date.  In contrast, a default occurs under the Dell Preferred Account Credit Agreement if a payment is not made when due.  As noted above, MCM's system does not consider these individual variations, instead using a conservative accrual date. In short, determining the actual date the statute of limitations expires on any given account requires a review of the underlying product type, loan documents, terms and conditions, payment history, choice of law, conflicts of law, and any facts specific to that account and consumer.  (McClure Decl. ¶ 19.)

## B.    Procedural History

### 1.    Plaintiffs' Right to Cure Notice did not Identify the Claims they Now Seek to Prosecute on Behalf of a Purported Class.

On July 26, 2017, Plaintiffs' counsel, Hamilton, Burgess, Young & Pollard, PLLC sent a purported right to cure notice to MCM.  The letter identified the grounds for the violation as "an attempt to collect a claim from a West Virginia Consumer in violation of *West Virginia Code* §46A-2-128(f) by sending an ***initial*** written communication ... where the debt sought to be collected was beyond the statute of limitations for filing a legal action for collection without providing the disclosures required by *West Virginia Code* § 46A-2-128(f)(1) and (2)." The letter further stated that any "subsequent communications with such individuals and the class of persons they represent" violate W.Va. Code § 46A-2-127(d), as well as W.Va. Code § 46A-2-127, W.Va. Code § 46A-2-128, and § 46A-2-104.  *Id.*  On September 8, 2017, Midland responded by letter

offering to cure the alleged violations individually with a payment of $6,000 (Bates # 001894.) Instead of responding, Plaintiffs chose to file this lawsuit.

### 2.      Plaintiffs' Complaint does not Allege a Violation of the 2017 Statutory Amendment, which is Now the Crux of Plaintiffs' Motion to Certify.

On October 3, 2017, Plaintiffs filed a Complaint against MCM (*See* Compl. [ECF No. 1]). The Complaint alleged MCM mailed Plaintiff Adkins three letters (dated April 19, 2017, May 31, 2017 and July 12, 2017) and Plaintiff Short two letters (dated July 19, 2017 and August 18, 2017) that sought to collect a debt when the debt was beyond the statute of limitations.  (Compl. ¶ 10.) The Complaint alleged that MCM's letters violated the WVCCPA because MCM failed to include the language required by W. Va. Code § 46A-2-128(f) in "*initial* communications" with consumers, failed to advise consumers that a payment could re-start the statute of limitations, and used the language, "due to the age of this debt, we will not sue you."  (Compl. ¶¶ 38-41.)

The Complaint alleges a class of West Virginia residents who were sent collection letters *on or after June 6, 2014*, where the debt was time barred, when (1) the "initial letter" did not include the W. Va. Code § 46A-2-128(f) disclosure; (2) any letter contained the words "due to the age of this debt, we will not sue you;" or (3) any letter offered installment payments and failed to advise that a partial payment could re-start the expired statute of limitations.  (Compl. ¶ 17.)

### 3.      Plaintiffs now Seek to Certify a Class they did not Plead Based on a Theory Never Identified in the Complaint.

Realizing the theory pled in the Complaint was legally flawed—the June 6, 2014 amendment required "cannot" only on the "*initial* communication," and did not require any disclosure on "*subsequent* communications" – and factually unsupported (*i.e.*, MCM complied with the June 6, 2014 amendment), Plaintiffs jettisoned that claim and latched onto a new one. (*See* Pls.' Mot., at 2).  Specifically, Plaintiffs now seek to certify the following putative class:

> All persons with West Virginia addresses to whom Midland sent a debt collection letter **on or after July 4, 2017** seeking to collect debt that **Midland's records indicated** had passed its statute of limitations, which letter failed to provide the following disclosure: "The law limits how long you can be sued on a debt. Because of the age of your debt, [Midland] cannot sue you for it."

*See id.* (emphasis added). This purported class is not identified in the Complaint and, more importantly, the Complaint does not plead Plaintiffs' new theory of liability – *i.e.*, a violation of W. Va. Code 46A-2-128(f) based on the alleged failure to provide the required disclosure on letters sent **after July 4, 2017**. For this reason alone, as set forth in MCM's Rule 12(b)(1) Motion to Dismiss [ECF No. 51], the Court should deny Plaintiffs' Motion. In addition, however, Plaintiffs' proposed class cannot be certified because determining when the statute of limitations ran on any class member's debt – an essential element of Plaintiffs' claim – requires individual proof.

### III.    STANDARD OF REVIEW

Because class certification is "an especially serious decision" with enormous consequences, *In re Constar Int'l Sec. Litig.*, 585 F.3d 774, 780 (3d Cir. 2009), "[c]lass actions are the exception, not the rule." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2014). The Supreme Court has articulated two principles of Rule 23 analysis that necessarily flow from the exceptional nature of the device: (1) "actual, not presumed" compliance with Rule 23 is "indispensable," and (2) a trial court must conduct a "rigorous analysis" of Rule 23's prerequisites before taking the extraordinary measure of certifying a class. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982); *Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As the Fourth Circuit has repeatedly stressed, it is *not the defendant* who bears the burden of showing that the proposed class *does not comply* with Rule 23, but *the plaintiffs* who bear the burden of showing that the class *does comply*. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F. 3d 311, 321 (4th Cir. 2006). Plaintiffs must prove every element of Rule 23(a): "numerosity of

parties, commonality of factual or legal issues, typicality of claims and defenses of class representatives, and adequacy of representation," and one of three subparts of Rule 23(b).  *Id.*

In making the Rule 23 determination, a court may not "simply . . . accept the allegations of a complaint at face value."  *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 365 (4th Cir. 2004). A plaintiff moving for class certification must introduce *evidentiary proof* sufficient to satisfy the requirements of Rule 23.  *Thorn*, 445 F.3d, at 319 (court must take a close look at the evidence relevant to the certification question and make specific findings on the propriety of certification).

**IV.    ARGUMENT**

**A.    Plaintiffs' Class Definition is Overbroad Because it does not Satisfy the Elements of a Properly Pled Claim under West Virginia Code 46A-2-128(f)**

In an obvious effort to side-step the inescapable conclusion that their putative class cannot be ascertained if properly defined, Plaintiffs rely on a conclusory, but inaccurate, interpretation of a single spreadsheet produced in this litigation – one that references MCM's internal estimate of the expiration of the statute of limitations.  Specifically, their class is defined to include consumers who received a letter, on or after July 4, 2017 "seeking to collect **debt that Midland's records indicated had passed its statute of limitations**, which letter failed to provide [the 128(f) disclosure]."  (Pl.'s Mem., at 2.) Thus, Plaintiffs seek to certify a class of individuals who received letters not after the date the relevant statute of limitations expired, but after a date MCM *estimated* as the expiration.  Plaintiffs' proposed class cannot be certified because it is facially overbroad.

**1.    A Class Definition Must Track the Elements of the Claim.**

To evaluate whether certification is appropriate, the Court first must consider the class definition.  *Adair v. EQT Prod. Co.*, No. 1:10-cv-00037, 2013 U.S. Dist. LEXIS 142005 *92-93 (W.D. Va. June 5, 2013) (citing cases), *rev'd on other grounds*, 764 F.3d 347 (4th Cir. 2014); *see also* Newberg on Class Actions § 3:1, 158 (5th ed. 2011) (courts "must be able to know who

11

belongs in the class before they can determine" Rule 23 prerequisites). Defining the class "is of critical importance" because it identifies the persons entitled to relief, bound by a final judgment, and entitled to class notice. *See Adair*, 2013 U.S. Dist. LEXIS 142005 at *93.

Consideration of class certification, therefore, must proceed on a "claim-by-claim basis" by reference to the elements of and remedies for each claim. *Bolin v. Sears, Roebuck & Co*., 231 F.3d 970, 976 (5th Cir. 2000). If a class definition does not track the elements of the claim, then it is overbroad. *Khalif L. v. City of Union City*, 2012 U.S. Dist. LEXIS 64567, at *18 (N.D. Cal. May 8, 2012) (plaintiff's failure to define a class in which membership is properly related to the merits of the claims is fatal); *Dykes v. Portfolio Recov. Assocs., LLC*, 2016 WL 346959, at *3 (E.D. Va. Jan. 28, 2016) (denying certification stating "Courts have refused to certify a class if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant"). Indeed, an overbroad definition raises serious constitutional concerns, as it would frustrate a defendant's right all available defenses and facilitate the granting of relief to individuals entitled to nothing. *See Dukes*, 131 S. Ct. at 2551 (Rule 23 cannot be interpreted to "abridge, enlarge or modify any substantive right").

> **2.    Plaintiffs' class is facially overbroad because it improperly assumes as a "fact" that MCM's internal estimate establishes the date the relevant statute of limitations actually expired on each putative class member's debt.**

West Virginia Code § 46A-2-128(f), which provides the basis for Plaintiffs' sole class claim, requires that creditors – when collecting a consumer debt – include certain disclosures on letters sent "when the debt is beyond the statute of limitations for filing a legal action for collection." The "statute of limitations" referenced is the relevant statute of limitations governing each putative class member's debt, which may be one of several West Virginia statutes of limitations. *See McKinney v. Fairchild Intern. Inc.*, 199 W.Va. 718, 727 (W.Va. 1997) (under West Virginia's choice of law rules, the "forum court always applies its own procedural rules and

practices," which includes the statute of limitations).  Or it could be one of the various state statutes identified in underlying account agreements, many of which also call for application of a state's choice of law rules.  (*See* McClure Decl. Ex. 1 *passim*).  In other words, for MCM to be liable, the relevant statute of limitations applicable to each putative class member's debt ***must*** have been expired at the time MCM sent the allegedly deficient letter.

Cognizant of the problems associated with doing so, Plaintiffs make no effort to define their purported class by reference to the *actual* expiration of any statute of limitations, and they do not (because they cannot) identify a particular, uniform statute of limitations applicable to all putative class member accounts.[2]  Instead, they rely on MCM's "estimated SOL expiration" date. (Pl.'s Mem., at 2.)  But Plaintiffs provide no evidence to support their conclusion that this "estimated" date is accurate or is, in fact, the date the pertinent statutes of limitations actually expired on the debts at issue.  On the contrary, the only evidence in the record demonstrates that the "estimated" date is just that – a ***conservative*** estimate internally calculated by MCM based on the use of broad rules. ***The calculation does not consider all of the aspects of the underlying loan agreement, such as whether it was signed, or all of the terms at issue.  Nor does it consider whether MCM received certain payments after it began servicing the debt, whether borrowing statutes might apply, whether the statute might be tolled for one of any number of reasons*** – all factors that impact (1) which statute of limitations applies and (2) when the cause of action accrued. *Clavell v. Midland Funding, LLC*, 2011 WL 2462046, at *3 (E.D. Pa. June 21, 2011) (Midland's calculation provides an *estimate*; determining which statute of limitations period governs or when it accrues requires an *account-level analysis*).  Indeed, a review of the account documents reveals

---

[2] The proposed class definition refers to a debt being barred by "its" statute of limitations. (Pl.'s Mem., at 2.)  However, what statute of limitations governs each debt is not identified in Plaintiffs' class definition – for the obvious reason that it is an individualized determination.

that many of the actual statutes of limitations applicable to the accounts included in the spreadsheet were not expired.  MCM cannot be liable to them for a violation of W.Va. Code §46A-2-128(f).

To avoid an overbroad class definition, Plaintiffs would have to include only consumers whose debts were barred by the relevant statute of limitations when the allegedly improper letters were sent.  The problem for Plaintiffs, of course, and the reason they avoid any such definition, is that ascertaining membership in such a class is not administratively feasible.  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (if "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate."). Determining which statute of limitations applies to each putative class member, and when it accrued, requires an account-level analysis.  *Clavell*, 2011 WL 2462046, *3-4 (class not ascertainable when determining whether debts were time barred would require an individual inquiry).  In short, Plaintiffs' class definition is untethered from the central element of a claim under W.Va. Code § 46A-2-128(f).  And any definitional amendment to track that element is impossible because it would result in a class that is not ascertainable.

**B.**  **Plaintiffs cannot Satisfy the Typicality and Commonality Requirements of Rule 23(a)(2) or the Predominance and Superiority Requirements of Rule 23(b)(3).**

**1.**  **Plaintiffs cannot show that common issues predominate.**

"[T]he Supreme Court's recent decision in [*Dukes*] has transformed the Rule 23(a)(2) commonality standard from a 'low bar' to a far more searching inquiry."  *Loef v. First Am. Title Ins. Co.*, 2012 U.S. Dist. LEXIS 174313, at *13 (D. Me. Dec. 10, 2012) (citations omitted).  To satisfy commonality under Rule 23(a)(2), a plaintiff needs to identify a common question; to satisfy the predominance standard of Rule 23(b)(3), however, that common question must "predominate" over individual ones.  *See* Fed. R. Civ. P. 23.  Under either rubric, *Dukes* clarified raising a common "question" is not enough.  The chief concern is "the capacity . . . to generate

14

common answers" that have the capacity to resolve "each of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551; see *Gariety*, 368 F.3d at, 362 (the predominance and superiority requirements" in Rule 23(b)(3) "are 'far more demanding' than Rule 23(a)(2)'s commonality requirement") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)).  Accordingly, the commonality requirement is subsumed under the more stringent Rule 23(b)(3) predominance requirement.

> ### a.    Liability requires an individualized inquiry.

Plaintiffs identify the common questions in this case as whether MCM's communications "seeking to collect time-barred debt sent after July 4, 2017" contained the statutorily required disclosure, and whether MCM is entitled to a class-wide defense based on *bona fide* error.  (Pl's. Mem., at 6.)  These questions, according to Plaintiffs, are dispositive and can be answered by common proof.  *Id.*  But Plaintiffs ignore the elephant in the room.  The crucial liability question in this case is not whether MCM sent letters containing a particularly-worded disclosure, but whether those letters were sent to consumers whose debts were "beyond the statute of limitations." And this question – was the debt time-barred? – inarguably cannot be answered by common proof. Nor do Plaintiffs make any effort to argue that it can.  Instead, they *assume* that the putative class members' debts were time-barred when they received the challenged correspondence.   As discussed above, however, there is no evidence supporting this bare conclusion.

On the contrary, the evidence demonstrates concretely that whether any putative class member's underlying debt was time-barred at the time MCM sent the allegedly deficient correspondence cannot be answered on a class-wide basis.  As one court observed, "[d]etermining whether a debt is time-barred is not always a simple task." *Riffle v. Convergent Outsourcing, Inc.*, 311 F.R.D. 677, 684 (M.D. Fla. 2015).  In *Riffle*, the court was presented with the same issue on behalf of a putative class – were the debts time-barred when the defendant creditor sought to recover them?  The court observed that answering that question would require considering many

factors, including "the charge-off date, tolling issues, revival issues, and any actions between the debtor and creditor that may have modified their original agreement." *Id. Riffle* involved a putative class owing debts originated by only one creditor. *Id.*, at 679. Here, the inquiry is further complicated by the fact that the debts are owed to at least 57 different creditors, each of whom has its own credit agreement and terms and conditions. Some agreements may be signed, others include various choice of law provisions or different events triggering default (and hence accrual of a claim). The individualized inquiry is therefore expanded to include determining *which* statute of limitations even applies to a given debt and *when* the cause of action accrued. None of this can be ascertained without conducting an account-level analysis. *See Clavell*, 2011 WL 2462046, *3-4 (identifying individualized issues, including choice of law, and tolling).

Under West Virginia law, the statute of limitations for an unsigned contract is five years. For a signed contract, such as several of those included in the sample accounts produced, the statute of limitations is double that – ten years. W. Va. Code § 55-2-6. Alternately, another state's statute may apply if the underlying account agreement includes a choice of law provision that dictates application of another state's statute of limitations. The result depends on a complicated choice of law analysis that must address case law interpreting that state's choice of law jurisprudence. Likewise, the underlying account agreement may dictate different default events, and governing law provisions may result in tolling or in revival of the statute of limitations if subsequent payments are made. The upshot is that determining when a cause of action accrues requires an analysis of the account documents, governing law, payment history, and other facts peculiar to each individual account. *See, e.g.*, *Stimpson v. Midland Credit Management*, 2018 WL 4643110 (D. Id. Sept. 27, 2018) (whether a debt is revived by partial payment is governed by the law of the consumer's credit card agreement); *Renault v. L. N. Renault & Sons*, 188 F.2d 317, 320 (3d Cir. 1951)

(discussing the substantive law on reviving a debt and noting that the applicable law would hinge on whatever is determined to be the "place of contracting").

Courts confronted with the same facts and issues have recognized the problems inherent in certifying a class involving thousands of individual determinations of the expiration of the statute of limitations.  As the court held in *Riffle*, 311 F.R.D., at 684, "[t]his is exactly the type of extensive factual inquiry that courts have held to be too administratively burdensome to warrant class certification."  *See also Parkis v. Arrow Fin. Servs., LLS*, 2008 WL 94798, *4 (N.D. Ill. Jan. 8, 2008) (denying certification on grounds that commonality did not exist when individualized inquiries necessary to determine whether a debt was time barred); *Jenkins v. General Collection Co.*, 2008 WL 4104677, *11 (D. Neb. Aug. 28, 2008) (denying class certification when individualized inquiry necessary to determine which statute of limitations applies and when it began to run).  The same reasons bar class certification here.[3]

Plaintiffs attempt to avoid these issues by relying on MCM's "estimated SOL expiration" date.  But as set forth above, this date is merely a conservative estimate based on MCM's internal systems – one that does not consider all the factors bearing on whether the statute has actually expired on an individual debt.  The statute only imposes liability for letters seeking to collect debts "beyond the statute of limitations," ***not*** letters seeking to collect debt beyond an estimated expiration date.  As in *Riffle*, Plaintiffs have not provided "any evidence from which the Court can determine *when* the statute of limitations began to [run] on each class member's debt."  311 F.R.D.,

---

[3] The cases cited by Plaintiff are inapposite.  Only one even dealt with the central issue involved here – what is the applicable statute of limitations and when did it run?  *Hordge v. First Nat'l Collection Bureau, Inc.*, Civil Action No. 4:15cv1695 (S.D. Tex. July 5, 2018) (Order attached as "Exhibit B" to Pl.'s Mot.) (applicable statute of limitations for credit card debt was four years, running from the date of last payment and class defined by reference to these specific parameters.) Unlike *Hordge*, this case involves different types of debt, different statutes of limitations, different accrual dates and a class definition that does not objectively define "time-barred debt."

at 683.  Nor have they provided any proof of *which* statute of limitations applies.  Instead, the only evidence shows the impossibility of common proof that each putative class member's debt was "beyond the statute of limitations" when MCM sent the letters.  As this Court has stated, a class cannot be certified if the issue of whether each class member has a cognizable claim will depend on "an individual inquiry that cannot be proven on a class-wide basis."  *Stand Energy Corp. v. Columbia Gas*, 2008 U.S. Dist. LEXIS 63913, *53 (S.D. W. Va. Aug. 19, 2008) (Chambers, J.).[4]

### b. Individualized defenses exist based on the terms of the underlying account agreements.

Plaintiffs insist that MCM possesses only the class-wide defense of *bona fide* error.  (Pl.'s Mem., at 6.)  While it is accurate that MCM has a meritorious *bona fide* error defense that is applicable to the entire potential class (based on the facts related to implementation of the July 4, 2017 requirement), MCM also has defenses based on the terms of the underlying account agreements.  As demonstrated by the examples attached as Exhibits 1-3 to the McClure Declaration, large numbers of the underlying account agreements, if not the majority, contain various arbitration provisions that bind putative class members to arbitrate their claims and waive any right to proceed via class action.  Thus, determining which putative class members are even eligible to participate in this litigation requires a review of the underlying account agreements.[5]

---

[4] For the same reasons, a class action is not superior to individual trials.  *See, Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.19 (5th Cir. 1996) (the predominance finding affects the superiority finding because "[t]he greater the number of individual issues, the less likely superiority can be established.").  In these circumstances, the inevitable difficulties in managing the proposed class substantially outweigh any benefits from consolidating the class claims.  *Shelley v. AmSouth Bank*, 2000 U.S. Dist. LEXIS 11429, *28 (S.D. Ala. 2000) (individual issues, "requiring painstaking manual review of each account," weighs against manageability). Plaintiffs cannot present their claims through representative proof and have no evidence of any other uniform method to prove the essential element of their class claim: whether their debts were time barred when MCM sent them collection letters.  The benefits of the class action device are non-existent.

[5] Although the arbitration provisions include different terms, they generally bind consumers to arbitrate their claims against not only the original creditor, but its successors and their respective

The Court cannot simply ignore concrete evidence that some class members are bound by arbitration agreements with varying arbitration provisions.  *See, e.g.*, *Karnes v. Flemming*, No. 07-0620, 2008 U.S. Dist. LEXIS 109518 *23 (S.D. Tx. July 31, 2008) (denying motion for class certification, finding that where a portion of the class may be subject to binding arbitration and the arbitration provisions vary, individualized issues defeat class certification).  Indeed, a class action is improper when the effect is to give defendants different rights in a class proceeding than they could have asserted in an individual action.  *See Dukes*, 131 S. Ct. at 2551(class cannot be certified on the premise that the defendant will not be able to litigate its defenses to the claim).  Accordingly, the Court cannot deprive MCM of its due process right to discover and present evidence, with respect to individual class members, that they have agreed to binding arbitration of their claims.

## 2.    Plaintiffs Cannot Satisfy the Typicality Requirement.

The "typicality" requirement of Rule 23(a) "goes to the heart of a representative['s] ability to represent a class."  *Dieter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006).  Plaintiffs' "interest in prosecuting [their] own case[s] must simultaneously tend to advance the interests of the absent class members."  *Id.*  The typicality requirement is not satisfied "when the facts required to prove the claims are markedly different between class members."  *Tipton v. Sec'y of Educ. of U.S.*, 1992 U.S. Dist. LEXIS 22797, at *25 (S.D.W.Va. Aug. 28, 1992) (Copenhaver, J.).

Plaintiffs, as class representatives, cannot demonstrate that their claims are typical because proof of their individual claims will not advance the interests of any other member of the putative class.  A fact-specific inquiry is necessary to determine which statute of limitations governs each putative class member's debt, when that statute of limitations accrued, and whether it was tolled or revived.  At best, Plaintiffs' common allegations that they received correspondence from MCM

---

agents, servicers, and affiliates.  Thus, they unquestionably apply to MCM, as well as Midland Funding.

containing a particularly-worded disclosure demonstrate typicality only on an "unacceptably general level," *Deiter,* 436 F.3d at 467. "[A]t a more directly relevant level," calculating the expiration of the statute of limitations for each putative class member's debt involves marked differences that "strike[] at the heart" of Plaintiffs' cause of action. *Id.* In other words, proving the statute of limitations had run on Plaintiff Adkins debt will not demonstrate that the statute of limitations had expired on any other putative class member's debt. Instead, that determination must be made individually *for each putative class member.*

Moreover, the individual facts surrounding the named Plaintiffs' claims demonstrate that their claims are not typical of other putative class members. The letters sent to both named Plaintiffs were sent to their attorneys' offices, not to them. (Pl.'s Ex. E.) Moreover, the only letters Mr. Short received after July 4, 2017 responded to a dispute lodged by Mr. Short's attorney. Even Mr. Short admitted that the letters do ***not*** make any attempt to collect a debt and, therefore, cannot violate W.Va. Code § 46A-2-128.[6] Thus, MCM has defenses to the named Plaintiffs' claims that are not applicable to other putative class members. Class certification is inappropriate where a class representative is subject to unique defenses which threaten to become the focus of the litigation. *McIntyre v. Household Bank*, 2004 U.S. Dist. LEXIS 25629, *18 (N.D. Ill. 2004) (even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy typicality). Plaintiffs have failed to demonstrate that their claims are typical of the class they seek to represent.

---

[6] Both named Plaintiffs do not even fall within the class definition. Mr. Short did not receive a "debt collection letter" and MCM did not "send" either plaintiff a letter. Accordingly, they lack standing to represent the class. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *General Tel. Co.,* 457 U.S. at 156.

## V.   CONCLUSION

For the foregoing reasons, Defendant Midland Credit Management, Inc. respectfully requests this Court deny Plaintiffs' Motion for Class Certification.


Dated: February 1, 2019                          Respectfully submitted,

/s/Jason E. Manning_____
Jason E. Manning (WVSB #11277)
Megan E. Burns (WVSB #13290)
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7564
Facsimile: (757) 687-1524
E-mail: jason.manning@troutman.com
*Counsel for Midland Credit Management, Inc.*