# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

STEPHANIE ADKINS and
DOUGLAS SHORT,

                Plaintiffs,

v.                                                  CIVIL ACTION NO. 5:17-cv-04107

MIDLAND CREDIT MANAGEMENT, INC.,

                Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Plaintiffs' Motion for Summary Judgment on Count Two* (Document 62), the *Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment on Count Two* (Document 63), *Defendant Midland Credit Management, Inc.'s Opposition to Plaintiffs' Motion for Summary Judgment on Count Two* (Document 74), and the *Plaintiffs' Reply in Further Support of Their Motion for Summary Judgment on Count Two* (Document 78), as well as all attached exhibits.

The Court has also reviewed *Defendant Midland Credit Management Inc.'s Motion for Summary Judgment* (Document 66), the *Memorandum in Support of Defendant Midland Credit Management Inc.'s Motion for Summary Judgment* (Document 76), the *Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment* (Document 77), and the *Reply Memorandum in Support of Defendant Midland Credit Management Inc.'s Motion for Summary*

*Judgment* (Document 79). For the reasons stated herein, the Court finds that the Plaintiffs' motion should be granted, and the Defendant's motion should be denied.

## FACTS[1]

The named Plaintiffs, Stephanie Adkins and Douglas Short, brought this action on behalf of themselves and a purported class of West Virginia consumers. They named as Defendant Midland Credit Management (MCM). Although the *Class Action Complaint* (Document 1) asserted violations of the Fair Debt Collection Practices Act (FDCPA) and multiple violations of the West Virginia Consumer Credit and Protection Act (WVCCPA), the Plaintiffs have agreed to dismiss their individual claims under the FDCPA, as well as all WVCCPA claims related to letters sent on or before July 3, 2017. (Pl.s' Resp. to Def.'s Mot. at 1.) The Court recently granted a motion for class certification related to the sole remaining claims. (Mem. Op.) (Document 89.) That class is defined as follows:

> All persons with West Virginia addresses to whom Midland sent a debt collection letter on or after July 4, 2017 seeking to collect debt that Midland's records indicated had passed its statute of limitations, which letter failed to provide the following disclosure: "The law limits how long you can be sued on a debt. Because of the age of your debt, [Midland] cannot sue you for it."

Accordingly, the Court will address only the facts and arguments related to the class claim that remains pending. In addition, the Court hereby incorporates the *Memorandum Opinion and Order* (Document 86) denying MCM's motion to dismiss and the *Memorandum Opinion and Order* (Document 89) granting the Plaintiffs' motion for class certification, as those opinions resolve some issues presented herein.

---

1 The facts are largely undisputed. To the extent any factual dispute exists, the Court will view the dispute in the light most favorable to the non-moving party as to each motion.

An amendment to the WVCCPA, effective July 4, 2017, requires that, when debt is beyond the statute of limitations, the following language must be included in all written communications with the consumer: "The law limits how long you can be sued on a debt. Because of the age of your debt, (INSERT OWNER NAME) cannot sue you for it." W.Va. Code § 46A-2-128(f). MCM monitored the progress of the bill that contained that amendment, among other changes to the WVCCPA, in the West Virginia legislature. After the bill was signed into law, MCM legal, compliance, and marketing personnel exchanged emails on April 27 and 28, 2017, discussing the content of the bill, including how to implement the change to the statute of limitations disclosure and the effective date of July 4, 2017.

Between January and April 2017, MCM implemented a new system for requesting changes in its debt collection correspondence. MCM's representative explained that the new system was intended to prevent change requests from falling through the cracks. Previously, the department or individual suggesting a change would email Marketing, and Marketing held follow-up meetings. Under the new system, the department or individual suggesting a change emails Marketing with a uniform request form, and Marketing holds follow up meetings. The April 28, 2017 email describing the amendments to the WVCCPA and the changes required for MCM's letter templates was submitted shortly after implementation of the new system but was not sent on the uniform request form. Marketing did not implement the change, and no follow up occurred until the Legal/Compliance Department discovered on or about August 9, 2017, that the change had not been made. Marketing corrected the letter templates by August 25, 2017.

MCM sent letters to the named Plaintiffs during the period after July 4, 2017, and before it implemented the changes to the letter templates to comply with the WVCCPA amendment. [MCM

sent letters to the named Plaintiffs after the July 4, 2017 effective date of the WVCCPA amendment that did not include the language required by that amendment.] MCM sent a letter dated July 19, 2017, addressed to Mr. Short but mailed to his attorney's office. The letter lists a current balance of $992.30. It references a dispute, indicates that MCM concluded that its "information is accurate" and verified the amount of Mr. Short's outstanding balance. (Short Letter, att'd as Pl.'s Ex. B) (Document 62-2.) The letter contains the following language: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it. If you do not pay the debt, we may continue to report it to the credit reporting agencies as unpaid." (*Id*.) The same language appears in a letter dated July 12, 2017, that MCM sent to Ms. Adkins. Ms. Adkins' letter lists a balance of $849.73 and offers "payment options" with a 40% discount for paying the reduced amount due in full by August 11, 2017, a 20% discount for paying the reduced amount due in six monthly payments, with the first payment due by August 11, 2017, or "Monthly Payments As Low As: $50 per month." (Adkins Letter, att'd as Pl.'s Ex. A) (Document 62-1.)

Both parties have submitted motions for summary judgment, which are fully briefed and ripe for ruling.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v.*

*Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the nonmoving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may

5

reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

When presented with motions for summary judgment from both parties, courts apply the same standard of review. *Tastee Treats, Inc. v. U.S. Fid. & Guar. Co.*, 2008 WL 2836701 (S.D. W. Va. July 21, 2008) (Johnston, J.) *aff'd,* 474 F. App'x 101 (4th Cir. 2012). Courts "must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law," resolving factual disputes and drawing inferences for the nonmoving party as to each motion. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citations omitted); *see also Monumental Paving & Excavating, Inc. v. Pennsylvania Manufacturers' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).

**DISCUSSION**

The Plaintiffs argue that they are entitled to summary judgment because it is undisputed that MCM violated Section 46A-2-128(f) of the WVCCPA by sending letters to class members that did not contain the specific language required by that section. MCM argues that any violation was the result of a bona fide error.[2] It contends that the violation was unintentional and that it

---

[2] MCM also argues that the letters to the named Plaintiffs do not constitute violations because they were mailed to attorneys' offices rather than directly to the Plaintiffs, and that Mr. Short's letter was not a collection attempt. MCM presented the same arguments as a basis to oppose class certification, contending that the named Plaintiffs were not typical or representative of the class. The Court rejected those arguments based on the case law, finding that § 128(f) requires the statute of limitations disclosure in all communications, and that letters sent to an attorney as the debtor's agent or representative are not excused from compliance with the WVCCPA. The Court has incorporated the opinion granting class certification and will not address those arguments herein.

maintained procedures reasonably adapted to avoid the violation by monitoring changes in the law and establishing a process for implementing corresponding changes to its collection activities. The Plaintiffs argue that MCM cannot rely on the bona fide error defense under the facts of this case, where fourteen employees were aware of the change to West Virginia law, including the individuals tasked with implementing the change in MCM's collection letter templates, yet they neglected to make the changes.

MCM concedes that it mailed letters to class members with debt outside the applicable statute of limitations without including the language required by Section 128(f) of the WVCCPA. The only issue for the Court is whether either party is entitled to summary judgment with respect to MCM's bona fide error defense.

The WVCCPA provides that "If the…debt collector establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error," the debt collector is excused from any liability. W.Va. Code § 46A-5-101(8). The FDCPA contains a similarly-worded provision, and the Fourth Circuit has enumerated the elements requiring a defendant to show that "(1) it unintentionally violated the FDCPA; (2) the violation resulted from a bona fide error; and (3) it maintained procedures reasonably adapted to avoid the violation." *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 389 (4th Cir. 2014). "The [FDCPA] is the federal equivalent of the WVCCPA," and the West Virginia Supreme Court has found that decisions interpreting the FDCPA may be instructive in considering similar provisions of the WVCCPA. *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 740 S.E.2d 562, 568 (W. Va. 2013); *see also Fleet v. Webber Springs Owners Ass'n, Inc.*, 772 S.E.2d 369, 378 (W. Va. 2015). The West

Virginia Supreme Court has also held that, as a remedial statute, "the WVCCPA should be construed liberally in favor of the consumer." *Vanderbilt Mortg. & Fin., Inc.*, 740 S.E.2d at 568 (citing *Dunlap v. Friedman's, Inc.*, 582 S.E.2d 841, 846 (W. Va. 2003)).

MCM argues that the WVCCPA's bona fide error provision is satisfied if a defendant demonstrates *either* that the violation was unintentional *or* that it was the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid the error. The Court finds that the language of the statute and the interpretations of the similarly-worded FDCPA provision[3] counsel otherwise, and that a debt collector must demonstrate that it maintained procedures reasonably adapted to avoid the error or violation. The evidence is unclear as to whether MCM's violations were intentional or unintentional. It contends it did not intend to violate the law and mistakenly failed to timely implement the WVCCPA amendment, but it undisputedly drafted letters without the required language and mailed them to consumers with debt outside the statute of limitations.

However, viewing the evidence in the light most favorable to MCM and assuming that the violation was unintentional, the Court finds that MCM has not produced sufficient evidence that it maintained procedures reasonably adapted to prevent this type of violation. Viewing the facts in the light most favorable to MCM, it had knowledge of the change in law, and several employees in the relevant departments communicated regarding the amendments to the WVCCPA in late April 2017. Around the same time as the amendments, MCM altered its procedure for submitting

---

3 The FDCPA provision states that a debt collection is not liable if it "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692(k)(c). Although the WVCCPA provision separates the intentionality element from the bona fide error element with "or" rather than "and," the Court finds that the maintenance of procedures element applies to both unintentional violations and bona fide errors of fact.

8

change requests to Marketing to update communication templates. An individual from the Legal/Compliance department sent an email to Marketing describing the change in West Virginia law and advising that the templates for letters to consumers with out-of-statute debt would need to be revised. The email did not include the special form required by MCM's newly-implemented procedure. Marketing did not make the change or follow up on the email, and no one from Legal/Compliance or any other department followed up until discovering the error months later.

The means by which Marketing was to receive requests to revise communications did not change. The new procedure simply required use of a specific form, still to be submitted via email. It is unclear how the compliance with that procedure eliminates the apparent error here: the email recipients failed to take any action as a result of the email. Permitting Marketing to ignore a change in the law unless it is submitted via a special form is hardly a procedure designed to avoid violations or errors resulting from failure to implement legal changes. MCM described its procedure for communicating change requests, but it did not connect the dots to explain how that procedure is designed to eliminate the risk of human error.

"It is clear that the quid pro quo in the FDCPA for forgiveness for human errors resulting in violations of the Act is the maintenance of a system that will make such human errors rare." *Webster v. ACB Receivables Mgmt., Inc.*, 15 F. Supp. 3d 619, 629 (D. Md. 2014) (finding that a debt collector had failed to "demonstrate a robust, effective system designed to minimize the type of error that occurred here.") Courts look for redundant or fail-safe systems designed to catch an error missed during the regular procedures by adding extra layers of review. MCM has presented no evidence of procedures designed to limit the risk of human error, such as pre-scheduling meetings at the time of submission of a change request, requiring follow-up by the individual

submitting a change request, or systems for Legal/Compliance to monitor for compliance *prior* to the effective dates of new legislation. Instead, MCM claims it implemented a new system requiring use of a special form to prevent change requests from falling through the cracks, and then blames its own failure to follow that system for the change request herein falling through the cracks. Because this is not the type of error protected by the bona fide error defense, and MCM has not presented evidence that would permit a reasonable jury to rule in its favor, the Court finds that the Plaintiffs are entitled to summary judgment as to liability for the Count Two class claims.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiffs' Motion for Summary Judgment on Count Two* (Document 62) be **GRANTED** and that *Defendant Midland Credit Management Inc.'s Motion for Summary Judgment* (Document 66) be **DENIED**. The Court further **ORDERS** that Count One and the individual WVCCPA claims be **DISMISSED** pursuant to the Plaintiffs' voluntary dismissal.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 10, 2019

_____
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA